UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

VALERIE WEST, ET AL.           :
                               :
v.                             : CIVIL NO. 2:83-CV-366(RNC)
                               :
                               :
COMMISSIONER JOHN R. MANSON,   :
ET AL.                         :
                               :

RULING ON JOINT MOTION FOR FINAL APPROVAL OF
SETTLEMENT AGREEMENT AND ORDER

Pursuant to Fed. R. Civ. P. 23(e), the parties, including the plaintiff classes of women who are or who in the future will be confined in Connecticut's correctional institution for women and the plaintiff class of children of these women (hereinafter "plaintiffs") and the Defendant Commissioner of the Department of Correction ("DOC"), jointly move for the final approval of the Stipulation preliminarily approved by the Court on July 5, 2017. For the reasons that follow, the parties' Joint Motion for Final Approval of Settlement Agreement **[Doc. #538]** is **GRANTED**.

BACKGROUND

The 1989 Consent Decree

This action was filed in 1983 as a class action pursuant to Fed. R. Civ. P. 23. A consent decree, entered on October 13, 1988, and approved by the Court on January 9, 1989, included a provision on page 66, Section IX, paragraph 2 stating in part:

1

"Defendants shall provide for a full-time attorney to represent CCIN inmates in family matters, such as divorces, child custody, DCYS proceedings, and other civil matters. This attorney shall be present at CCIN at least one day or its equivalent per week." [Doc. #175 at 66, §IX, ¶2].

Motion to Terminate

On March 31, 2017, Defendant Commissioner of Correction filed a Motion to Terminate Prospective Injunctive Relief [Doc. #491], seeking to terminate Section IX, paragraph 2 of the 1989 consent decree, pursuant to the Prison Litigation Reform Act (PLRA), 18 U.S.C. §3626(b)(2).

Settlement Agreement

On June 30, 2017, the parties entered into a private settlement agreement whereby plaintiffs agreed not to oppose defendant's pending motion to terminate and defendant agreed to certain steps to make family law information available to DOC inmates, through family law seminars and access to CTLawhelp.org materials. [Doc. #538 ¶3(a); Doc. #520-1 ¶(1)]. "As consideration for the plaintiffs' relinquishment of their rights to oppose the motion, the defendant shall, as set forth in this Agreement, arrange for provision on a gender neutral basis of civil legal assistance to [] inmates incarcerated in

2

correctional institutions...."[1] [Doc. #520-1 ¶(1)(a-c)].

Counsel for the parties jointly moved the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for preliminary approval of the proposed Stipulation, for a hearing, and for authorization of notice of the hearing to be provided to members of the plaintiff class on June 30, 2017. [Doc. #520].

On July 5, 2017, the Court preliminarily approved the proposed Stipulation and set a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for the purpose of determining whether the proposed Stipulation is fair, reasonable, and adequate. Notice of Proposed Settlement of Class Action Regarding Court Access in Family Matters was issued to the plaintiff class. A fairness hearing was held on August 2, 2017, which offered any objector an opportunity to be heard. [Doc. ##523, 524, 525, 538].[2]

---

[1] The parties agreed to amend the private settlement agreement to remove the word "indigent" from the settlement agreement at paragraph one as part of the final agreement. See Doc. #538 at ¶5(iv). "It is the intent of the parties that inmates' access to the family seminars and CTLawHelp materials is not dependent on or restricted by the amount of money in their inmate accounts." Id.

[2] Counsel for Plaintiff Class of female inmates Dan Barrett from the Connecticut Civil Liberties Union, and counsel for Plaintiff Class of children Lynn Cochran, Linda Allard, and Giovanna Shay from Greater Hartford Legal Aid were present at the hearing. Attorneys from the Inmate Legal Assistance Program ("ILAP"), Walter Bansley, Kristen Losi, and Alexandra Georgieva, attended the hearing and Attorneys Bansley and Losi offered testimony. Attorneys Steven Strom and Stephen Finucane appeared for

3

Class Members

The Consent Judgment, approved and adopted on January 9, 1989, identifies the plaintiff class as follows,

> The provisions of this Consent Judgment resolve the existing disputes and issues in the above-entitled case between the plaintiffs, individually and those similarly situated as present and future inmates confined at The Connecticut Correctional Institution at Niantic [("CCIN")], and the defendants, all of whom are officials and employees of the Connecticut Department of Corrections, and Department of Children and Youth Services.

[Doc. #175 §I ("General Provisions"), ¶1]. Section I, paragraph 7(d) further states "'Inmate' shall mean the plaintiff class comprised of women who are or in the future will be confined in the Connecticut Correctional institution at Niantic whether in pretrial or sentenced status."

APPROVAL OF THE SETTLEMENT AGREEMENT

The Court hereby grants the Motion for Final Approval in accordance with the terms set forth in the Settlement Agreement.

Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively "fair, reasonable and adequate." Fed. R. Civ. P. 23(e). Approval of a settlement under Rule 23 will only be disturbed upon a

---

defendants. Attorney Nicole Anker appeared on behalf of the Legal Affairs Unit of the Department of Correction. Inmate James Harnage appeared by telephone.

4

"clear showing" of abuse of discretion. D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), (citations omitted), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000)).

To determine procedural fairness, courts examine the "negotiating process leading to the settlement." Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005); D'Amato, 236 F.3d at 85 (citation omitted)("The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms.").

To determine substantive fairness, courts consider the nine factors set forth in City of Detroit v. Grinnell Corp.,

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), (citations omitted), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000).

5

Procedural Fairness: The Negotiation Process

"A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." D'Amato, 236 F.3d at 85 (quoting Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982)); Malchman v. Davis, 706 F.2d 426, 433 (2d Cir. 1983)(A reviewing court "has an obligation to consider whether the interests of the class are adequately represented" and "must examine the quality of representation with particular care...."); Fed. R. Civ. P. 23(a)(4)(Rule 23(a)(4) requires that in a class action, "the interests of the class" must be "fairly and adequately protect[ed].").

Legal Representation

This Court is familiar with the history of this case, with counsel and the legal entities that represent the Plaintiff Classes.[3] Since 1993, the Court has overseen compliance with the 1989 Consent Decree, the monitoring panels established under the Decree and mediation of legal issues as they arose.

---

[3] The Court's involvement with this case dates to October 7, 1993, when Judge Cabranes appointed the undersigned as successor settlement judge. [Doc. #281].

6

With respect to the parties' request to approve the Settlement Agreement, the Court finds that the interests of the Plaintiff Classes have been well represented by skilled and experienced counsel who effectively represented the classes' interests. Counsel for the Plaintiff Class of children represented that "[t]he parties engaged in lengthy negotiations, involving several in-person meetings and phone conferences, and including the Defendant's current contract attorneys who provide legal assistance to inmates in family matters." [Doc. #538-1 Cochran Decl. ¶6]. As set forth at the hearing, the Assistant Attorney General represented that informal discovery was conducted to ascertain the cost of providing legal services to all inmates of both genders. The parties agreed that the cost factor was prohibitive and a financial impossibility during the current state budgetary crisis. Counsel for defendant represented that this compromise will not cost the state additional money and, by reallocating the funds, these services are now available to inmates of both genders. The parties represent and the Court finds that "[t]his settlement agreement, a private settlement agreement with the meaning of 18 U.S.C. §3626(c)(2), is the product of these negotiations." Id. "All counsel determined that this agreement is fair, is more equitable to all inmates in that

7

it provides reasonable access to family law legal self-help materials and information to both male and female inmates while eliminating female inmates' legal access to direct civil representation by the Defendant's contract attorneys." Id.

At the fairness hearing, counsel from Inmate Legal Services reported that they have held three to four well-received workshops on family issues at York CI, the women's facility which replaced Niantic. In June, two attorneys from ILAP held their first workshop at Carl Robinson Correctional Institution in Enfield, a facility that houses male inmates. Approximately forty-two inmates attended this seminar, which lasted about two hours. Each inmate was provided with an information packet containing forms, and judicial self-help booklets were made available. The first hour consisted of a presentation by counsel on family issues including divorce, custody and visitation, followed by a question and answer period when inmates asked questions at a microphone and the attorneys responded to the whole group. As per the proposed Settlement Agreement, similar workshops will be held at "each DOC facility once each year for such trainings and seminars." [Doc. #520, Settl. Agree. (1)(a)]. Moreover, no inmate is precluded from accessing and using the services offered to pro se

litigants by the Connecticut Superior Court in family court proceedings.

The agreement to resolve the defendant's Motion to Terminate Prospective Injunctive Relief was reached after informal discovery through arms-length negotiations conducted by experienced counsel, knowledgeable of the issues and interests of the Plaintiff Classes.

Adequate Notice

The Court finds that adequate notice was provided to the Plaintiff Classes. Pursuant to the Court's July 5, 2017 Order, the following steps were taken to disseminate the Notice to the plaintiff classes by Greater Hartford Legal Aid, Department of Correction, York Correctional Institution, and the Department of Family Services.

Counsel for the plaintiff class of children, Attorney Cochrane of Greater Hartford Legal Aid, averred that

a. No later than July 10, 2017, 8 ½" x 11" posters of the Notice in English and Spanish, prepared by Plaintiff's counsel, were posted in the waiting room of Greater Hartford Legal Aid (GHLA), with a copy of the Stipulation available from the receptionist.

b. No later than July 12, 2017, the Notice was posted in English and Spanish on Greater Hartford Legal Aid's website, as required by the Court Order.

c. On July 6, 2017, I personally handed Deborah Johnson, an employee of Families in Crisis, multiple copies of the Notice in English and Spanish. Families in Crisis [("FIC")] provides van service for families visiting York CC. She stated she was

familiar with this Consent Decree, that she
understood the reason for the Notice, and would
speak with the Executive Director about posting it.
On July 10, 2017, we emailed FIC the notices in both
English and Spanish, and requested they be posted.
On or about July 13, 2017, I received a letter from
Families in Crisis, dated July 10, 2017, announcing
their dissolution as of September 30, 2017, due to
budget cuts. On July 18, 2017, Deborah Johnson left
me a voicemail saying that FIC would not post the
notices because it has a contract with the
defendant, DOC and feel that posting it would
present a conflict of interest.

[Doc. #538-1, Cochran Decl. ¶¶3(a)-(c), 4].

Attorney Nicole Anker for the Department of Corrections averred that she "caused copies of the Class Notice, in English and Spanish, as well as a copy of the Stipulation, to be posted prominently on the Department of Correction (DOC) website." Id. Anker Decl. ¶3.

Warden Antonio Santiago, York Correctional Institution ("York CI"), averred that he arranged for the Class Notice, in English and Spanish, to be posted in common areas of the inmate housing units and in the visiting room of York CI for no less than 15 days until the date of the fairness hearing by this Court. Id. Santiago Decl. ¶¶2-3.

Similarly, Attorney Barbara Claire of the Department of Children and Families ("DCF") averred that the Class Notice, in English and Spanish, was posted in the DCF offices. Id. Decl. Claire ¶¶2-3.

Accordingly, the Court finds that adequate notice was

provided to the Plaintiff Classes pursuant to the Court's July 5, 2017 Order.

Substantive Fairness

As a preliminary matter, not all the Grinnell factors are applicable to the Court's evaluation of the parties' private Settlement Agreement, as it merely terminates and replaces one provision of the original agreement, Section IX, Paragraph 2 of the 1989 Consent Decree. The relevant factors are analyzed below.[4]

Complexity, Expense and Likely Duration of the Litigation

The first Grinnell factor to consider is "the complexity, expense and likely duration of the litigation." 495 F.2d at 463. Since March 31, 2017, when defendants filed a Motion to Immediately Terminate Section IX, paragraph 2 of the 1989 Consent Decree, the parties have engaged in negotiations to seek a resolution that would benefit the Plaintiff Classes. Defendants moved to terminate this provision because an equal protection challenge to the DOC's practice of providing an attorney to represent only York inmates in family matters had survived

---

[4] Grinnell factors 3-9 do not apply in this context as the parties' Settlement Agreement has been in effect since 1989 and seeks to terminate only one paragraph of one section of the agreement. As set forth above, factors 1 and 2 weigh in favor of approving the settlement.

11

motions to dismiss in state and federal court. See <u>Harnage v. Schulman</u>, No. CV125014356, 2013 WL 7020540 (Conn. Super. Ct. Dec. 23, 2013); <u>Harnage v. Dzurenda</u>, 176 F. Supp. 3d 40 (D. Conn. 2016). Defendants also claimed that these legal services were not constitutionally required under the Supreme Court's access to court doctrine, as explained in <u>Lewis v. Casey</u>, 518 U. S. 343 (1996), and in addition, was approved 'in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. 18 U.S.C. §3626(b)(2)'" [Doc. #491 at 1].[5][6]

Soon after defendants filed their Motion to Terminate the parties began discussions to resolve by agreement the termination of Section IX, paragraph 2 of the 1989 Consent Decree. See Doc. #497 (Joint Emergency Motion to Postpone Stay of Consent Decree Provision filed April 7, 2017). As set forth above, the parties engaged in lengthy

---

[5] Defendants also pointed out that the Correctional Institution in Niantic ("CCIN") referenced in the 1989 Consent Decree no longer exits. After the Consent Decree was entered, York CI was constructed with a library with some legal resources, whereas CCIN had no library.
[6] This statutory requirement was part of the Prison Litigation Reform Act ("PLRA"), which became law in 1996.

12

negotiations, involving several in-person meetings and phone conferences, and included the attorneys from ILAP who provide legal assistance to inmates in family matters. [Doc. #538 at 4]. Informal discovery was conducted. On June 30, 2017, the parties reported they entered into a Settlement Agreement/Stipulation resolving defendants' Motion to Terminate Prospective Injunctive Relief, specifically Section IX, Paragraph 2 of the 1989 Consent Decree. [Doc. #520]. The Agreement was a product of those negotiations. The parties acknowledged that the likelihood of defendants' Motion to Terminate Prospective Injunctive Relief being granted was substantial. [Doc. #538 at 5]. Specifically, plaintiffs agreed not to oppose defendants' Motion to Terminate. "As consideration for plaintiffs' relinquishment of their rights to oppose the motion, the defendant shall, as set forth in [the] Agreement, arrange for provision on a gender neutral basis of civil legal assistance to [] inmates incarcerated in correctional institutions ...." [Doc. #520 Settl. Agree. ¶1(a)-(c)]. While counsel for plaintiffs would have preferred to "level up" and provide the legal services under the 1989 Consent Decree to all inmates, they acknowledge that the PLRA does not provide authority for doing so. They agreed that, given the PLRA, this Settlement Agreement was the best relief

available under the circumstances and it also provided these resources to all inmates regardless of gender.

The parties believe, and the Court finds, "that resolution of this matter through negotiation, rather than through further lengthy and expensive adversarial litigation is in the best interests of both the Defendant and Plaintiff classes." Id. ¶2.

Reaction of the Class to the Settlement Agreement

The next Grinnell factor to consider is "the reaction of the class to the settlement." 495 F.2d at 463. At the hearing, the parties stated that they received no objections or comments from the class members other than the objections filed on the Court's docket by inmate James Harnage. [Doc. #528, 529; see Doc. #538 Cochran Decl. ¶5 ("Counsel for the class of children received no written or verbal communication or emails in response to the Notice, other than proposed intervenor James Harnage's Proposed Amendments that were filed with this Court."); Barrett Decl. ¶2 ("I have not received any comments, objections, or feedback about the proposed settlement, or the parties' joint motion for settlement, from any person or entity other than that filed with the Court [ECF #528].")].

Inmate James Harnage participated in the fairness hearing by phone. The parties opposed Harnage's Motion to

14

Intervene on the grounds that he does not have standing as a class member. As pointed out by counsel for the Plaintiff Class of female inmates, Mr. Harnage is neither female or transitioning to become a female. Moreover, Mr. Harnage is currently litigating an equal protection challenge to Section IX, Paragraph 2 of the 1989 Consent Judgment in at least three separate actions. Harnage v. Dzurenda, 3:14-CV-885(HBF) (D. Conn.); Harnage v. Lantz, KNL-CV-15-5014955 (Conn. Super. Ct.); Harnage v. Schulman, KNL-CV-12-5014356 (Conn. Super. Ct.). Thus, Harnage cannot claim he is not being provided with access to court on this equal protection challenge. Nevertheless, the parties considered his objections and requests to amend and agreed to Harnage's request to amend their Settlement Agreement at paragraph 1 to omit the word "indigent" from the Agreement. Defendants agreed that all inmates may participate and attend workshops or access the computer and forms for civil family court materials.

The Court finds that the Plaintiff Class implicitly approved the parties' Settlement Agreement as they filed no objections to the settlement and this weighs in favor of settlement approval. The Court also notes that the parties carefully considered Mr. Harnage's proposed amendments and objections in fashioning their agreement.

15

### The Settlement was Fair, Reasonable and Adequate

For the reasons set forth above, the Court finds that the parties have worked out a meaningful agreement for defendant to contract/arrange for attorneys or paralegals to conduct trainings and seminars on legal proceedings and remedies in civil family court, and facilitate access to legal self-help materials and forms on CTLawhelp.org that will benefit all inmates regardless of gender.[7] Moreover, the Settlement Agreement preserved the provision of these services to female inmates which were at risk of immediate termination. [Doc. #538-1 Cochrane Decl. ¶10 ("In the absence of this settlement agreement, the likelihood of the Defendants' Motion to Terminate Prospective Injunctive Relief being granted is substantial."). On balance, the agreement is substantially fair in light of the attendant risks and costs of further litigating this issue. [Doc. #538-1 Cochrane Decl. ¶10 ("All counsel determined that this agreement is fair, is more equitable to all inmates in that it provides reasonable access to family law legal self-help materials and information to both male and female

---

[7] As stated by counsel for plaintiffs, "This settlement agreement in no way affects eligible inmates' a cess to court appointed counsel in Probate Court guardianship proceedings or Superior Court for Juvenile Matters proceedings affecting guardianship and parental rights."). [Doc. #538-1 Cochrane Decl. ¶10].

inmates, while eliminating female inmates' access to direct civil representation by the Defendant's cont[r]act attorneys."). At the fairness hearing, all counsel moved for approval of the Settlement Agreement. The Court finds that experienced and able counsel reached a fair, adequate and reasonable compromise to the benefit of all incarcerated individuals of both genders, while preserving for the plaintiff classes those kinds of legal assistance for which the most interest and need has been demonstrated during the operation of the consent decree.

Accordingly, the Court approves the parties' Settlement Agreement.

ORDER OF FINAL APPROVAL OF PRIVATE SETTLEMENT AGREEMENT

The parties' proposed Settlement Agreement having been preliminarily approved by this Court on July 5, 2017 [Doc. #523]; adequate notice having been made to the class members; and the parties having appeared through counsel at a fairness hearing pursuant to Fed. R. Civ. P. 23(e) on August 2, 2017, this Court hereby finds that the settlement in the above-captioned matter is fair, reasonable and adequate.

The parties agree that the word "indigent" is to be stricken from paragraph 1 of the Stipulation. Accordingly, the Settlement Agreement is APPROVED under Fed. R. Civ. P. 23, provided that the parties conform their agreement to this Order

of Final Approval by removing the word "indigent" from paragraph 1.

CONCLUSION

Accordingly, the parties' Joint Motion for Final Approval of Settlement Agreement **[Doc. #538]** is **GRANTED**. Defendants' Motion to Immediately Terminate Prospective Injunctive Relief Pursuant to 18 U.S.C. §3626(b)(2) as to Section IX, Paragraph 2 of the 1989 Consent Judgment **[Doc. #491]** is **GRANTED** in light of the parties' Settlement Agreement at paragraph 1. [Doc. #520-1 ¶1].

This is not a Recommended Ruling. The parties consented to the jurisdiction of a United States Magistrate Judge with appeal to the Court of Appeals on the record during the hearing on August 2, 2017, for a ruling on the Joint Motion for Final Approval of Settlement Agreement and entry of related orders. Fed. R. Civ. P. 73(b)-(c).

SO ORDERED at Bridgeport, Connecticut this 7th day of September 2017.

```
      /s/
_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE
```